## JOHN HOPPER v. G. C. HOPPER.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 27, 1891—Decided January 4, 1892.

(a) The defendant in a bill for a mandatory injunction, having on his own land a spring from which flowed a small surface stream on to the plaintiff's land, dug into the bank, opened up the spring at a higher level, and carried the stream to one side to a watering trough, as reasonably necessary for his enjoyment of the water:

1. A decree " that the defendant convey the surplus water from his watering trough in a covered pipe to the plaintiff's land, if the plaintiff elect to receive the water in this way, and if not, then the defendant is not required to so conduct it," refusing to require the stream to be restored to its original and natural channel, was not error.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 82 October Term 1891, Sup. Ct.; court below, No. 278 January Term 1891, C. P. No. 2, in Equity.

To the number and term of the court below, John Hopper filed a bill in equity against Goodman C. Hopper, praying, upon

the facts therein averred as to a small stream of water flowing from a spring on the defendant's land on to the plaintiff's land, for a decree " to enjoin and require said defendant to return said stream to its original and natural channel, and to allow the same to flow into the spring-house and watering trough of" the plaintiff ; and for other relief.

An answer having been filed and issue joined, the cause was referred to *Mr. S. A. McClung*, as examiner and master, who subsequently filed a report finding in substance the following facts :

1. From 1854 until 1873, defendant's father and the plaintiff were seised in fee, as tenants in common, of a tract of land in South Fayette township.

2. In August, 1873, they made amicable partition of said farm by deed, defendant's father becoming sole owner of the farm now occupied by defendant, and of which he is now the sole owner by descent from his father and purchase of his brother, and plaintiff becoming sole owner of the farm now held and occupied by him.

3. At the time of said partition, and for years prior thereto, there existed upon defendant's land, which lies above plaintiff's, a spring about nine feet from the line, the water from which ran, by a well-defined natural channel, across said line on to plaintiff's land.

4. For more than thirty years prior to 1886, said water had been used by the occupants of plaintiff's tract, to supply a water-trough, situated a short distance below the line ; and plaintiff had so used it ever since the partition, at times using it also to supplement the supply of his spring-house, the water being conducted from a point at or near the line to said water-trough and spring-house, by a wooden spout or trough.

5. In the fall of 1886, the defendant, with the intention to intercept and lead off the underground stream which supplied the spring, dug a trench back of the spring, and when the stream was found, conducted the water by a terra-cotta pipe for a distance of some thirty feet, and thence by a French drain to another portion of his land, taking it entirely away from the spring (which has since been partially dry), and not returning the water or any part of it to its natural channel.

6. The use to which defendant puts said water is the supply-

ing of a water-trough for his cattle pasturing in the field, and the water used by the cattle is a comparatively small portion of that which the spring supplies.

—Citing and considering Wheatley v. Baugh, 25 Pa. 528 ; Lybe's App., 106 Pa. 626 ; Whetstone v. Bowser, 29 Pa. 59 ; Collins v. N. Gas Co., 131 Pa. 143 ; Lord v. Water Co., 135 Pa. 130 ; Hacke's App., 101 Pa. 245, the master concluded :

Defendant is entitled to use this spring or stream for the purpose of watering his cattle ; and he can carry it to one side of its course for that purpose, provided he returns it, undiminished save by use, to the channel by which it flowed over plaintiff's line.

Plaintiff, before the master, expressed a willingness to accept the waste from a trough to be erected at or near the point where the pipe laid by defendant comes to the surface of the ground, if defendant would at his own expense pipe it to the trough of plaintiff formerly supplied by the stream.

Plaintiff should have a decree requiring defendant to return this stream to its natural channel at or above the point at which that channel crosses plaintiff's line ; or, that defendant erect a trough to receive the water from the pipe laid by him, and at his own expense lay proper and convenient pipes to conduct the waste of said water from said trough to plaintiff's trough ; and that defendant pay the costs.

Exceptions by defendant to the master s report having been argued, the court, WHITE, J., on January 17, 1891, filed the following opinion and decree :

[The plaintiff had no grant or prescriptive right to any interest in the spring on defendant's land, and no easement upon his property.] [1] The defendant had the sole and exclusive right to the spring and land.. He could use all the water of the spring for his own legitimate purposes, if so needed ; or, he could make any improvements or arrangements about the spring, necessary for the convenient use of the water for his family or the stock on his farm. All the right the plaintiff had was in the waste or surplus water that flowed on to his land, after the defendant had been supplied. The defendant could dig into the bank, open up the spring at a higher level, and carry the stream to one side of the original outlet, if rea-

sonably necessary for his proper enjoyment of the water. All the plaintiff could ask, in such a case, would be that the surplus water should be permitted to flow back on to his land for his use.

This case is not, properly speaking, the diversion of a natural water-course, of a stream of considerable size, and some principles applicable there do not apply here. The spring, as appears from the evidence, was only about eight or ten feet from the line between the lands of plaintiff and defendant; came out in low ground, and had steep banks on all sides, except toward the division fence; and from its peculiar situation could not admit of a trough, or other proper arrangement for the watering of defendant's stock. He dug a lateral trench, striking the stream some nine feet higher up in the bank, and connected it in pipes fifty-seven feet, to get fall enough for a watering trough. From the evidence and master's finding, this was necessary for the defendant's proper enjoyment of the water. There is no evidence, or even allegation, that it was done through any other motive, or that he could have dug a trench or carried the water to any other point less injurious to the plaintiff. The defendant had therefore a right to do what he did.

The plaintiff had carried the surplus water that entered his premises from the spring, in a surface ditch or wooden spout, sixty-eight feet, to a watering trough adjoining his spring-house. He had a spring of his own, used in the spring-house and for family use, and this water was used mainly for his stock, as his own spring was too low to feed the trough. Occasionally, in dry seasons, when his spring got very low, this water was used for other purposes. The point to which the defendant carried the water to his trough, was lower than the place where the stream had originally entered the plaintiff's premises. It was impossible, therefore, to carry back the surplus water to that place. But it could be carried by pipes, in a new direction, to plaintiff's watering trough, a distance of eighty-seven feet, only nineteen feet farther than the former course.

What now were the rights and duties of the parties? The plaintiff had a right to have the surplus flow on to his premises, if he needed and desired it. The duty of the defendant was to accord him that right, and carry the surplus water to the

Opinion of Court below.

division line.   That, I think, was all the duty the defendant owed the plaintiff, under the circumstances of this case.

The plaintiff filed his bill to compel the defendant to let the water from the spring flow on to his premises at the original place.   That would require the defendant to undo all he had done, and virtually deprive him of the use of his spring.   The plaintiff had no right to make such a demand.   The defendant says he offered to carry the surplus water to the division line, but plaintiff refused to have it so, and he had, therefore, to carry it away on his own premises.   The plaintiff now offers to have the water carried to his trough by the new route, but insists that defendant shall pay the expense.   The expense of this will be trifling, compared with the costs of the case, which are now the main matter in controversy.

The defendant should carry all the waste or surplus water from the new outlet of the spring in a covered pipe to the line of plaintiff's land, at a point most convenient for plaintiff, and the plaintiff then carry it at his own expense to his watering trough.   Both parties were more or less to blame in the controversy.   The plaintiff was unreasonable in his demands, and the defendant hardly as neighborly and accommodating as he should have been : each was inclined to deny any rights to the other; each should therefore, pay one half the costs.

The exceptions to the master's report are sustained, as far as indicated in the foregoing opinion.

And now, January 17, 1891, this cause came on, and was argued by counsel; thereupon, it was ordered, adjudged and decreed that the defendant convey the surplus water from his watering trough in a covered pipe to the line of plaintiff's land, if the plaintiff elect to receive the surplus water in this way, and if not, then defendant is not required to so conduct it; and that each party pay one half of the costs, including a master's fee of seventy-five dollars.[3]

—Thereupon, the plaintiff took this appeal, specifying that the court erred :

1. In the ruling embraced in [   ][1]

2. In not entering a decree that the defendant return the stream of water to its original channel, and that he pay the costs.

3. In entering the final decree.[3]

Syllabus.

*Mr. Thos. Herriott,* for the appellant.

Counsel cited : Nicholas v. Chamberlain, Cro. Jac. 121 ; Angell on Watercourses, §§ 161, 151; Seibert v. Levan, 8 Pa. 383 ; Lord v. Water Co., 135 Pa. 122 ; Haupt's App., 125 Pa. 211.

*Mr. J. W. Hall,* for the appellee

Counsel cited : Lybe's App., 106 Pa. 631 ; Greenleaf v. Francis, 18 Pick. 117.

PER CURIAM :

We are not clear that the learned judge below was entirely accurate in saying that " the plaintiff had no grant or prescriptive right in the spring on the defendant's land." It is true, the defendant would have the right to use all the water from the spring, if necessary for the ordinary uses of his land, but we think the plaintiff was entitled to have the surplus, if any, returned to its original channel for his use. The decree of the court below, however, provides for this, and we think works substantial justice between the parties. It is needless, therefore, to criticise the manner by which this result was reached.

> The decree is affirmed, and the appeal dismissed at the costs of the appellant.